# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

YASHICA C. JONES,         )
     Plaintiff,            )
                            )
v.                          )      **CIVIL ACTION NO. 1:17-00416-N**
                            )
NANCY A. BERRYHILL, *Acting* )
*Commissioner of Social Security*, )
     Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff Yashica C. Jones brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. Upon consideration of the parties' briefs (Docs. 17, 21) and those portions of the administrative record (Doc. 16) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument held May 17, 2018, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** to the Commissioner under sentence four of § 405(g) (applicable to SSI claims under § 1383(c)(3)) for further administrative proceedings.[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 24, 25).

# I.    *Background*

On February 27, 2014, Jones filed an application for SSI with the Social Security Administration ("SSA"), alleging disability beginning May 16, 2007.[2]  After her application was initially denied, Jones requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review.  Hearings were held with an ALJ on October 23, 2015, and June 3, 2016.  On September 29, 2016, the ALJ issued an unfavorable decision on Jones's application, finding her not disabled under the Social Security Act and thus not entitled to benefits.  (*See* R. 14 – 29).

The Commissioner's decision on Jones's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied Jones's request for review of the ALJ's decision on August 24, 2017.  (R. 1 – 5).  Jones subsequently filed this action under § 1383(c)(3) for judicial review of the Commissioner's final decision.  *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the

---

[2] "Title XVI of the [Social Security] Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. [42 U.S.C. ]§ 1382(a)."  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 20 C.F.R. § 416.202–03 (2005)).

amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).   " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices*

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and

---

*& Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for…SSI requires that the claimant be disabled. 42 U.S.C. §…1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §…1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per

curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-

(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate

both a qualifying disability and an inability to perform past relevant work." *Moore*,

405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

"In determining whether the claimant has satisfied this initial burden, the

examiner must consider four factors: (1) objective medical facts or clinical findings;

(2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the

claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005

(11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The undersigned will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Jones had not engaged in substantial gainful activity since February 27, 2014, her SSI application date. (R. 19). At Step Two, the ALJ determined that Jones had the following severe impairments: migraine headaches, hypertension, obesity, diabetes, and depression. (R. 19 – 20). At Step Three, the ALJ found that Jones did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 20 – 22).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do

despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step...20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Jones had the RFC "to perform many elements of a light range of work as defined in 20 CFR 416.967(b),[6] but not a 'full range' of such work (SSR 83-10). For instance, she can only occasionally bend, squat, crouch, kneel, and stoop, i.e. primarily due to her obesity. The claimant cannot climb ladders, scaffolds, or ropes or crawl. The claimant can occasionally ascend and descend stairs and frequently ascend and descend ramps. The claimant cannot work around unprotected heights or dangerous moving machinery secondary to her

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations ... Each classification ... has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. § 416.967.

history of migraine headaches. She cannot operate motor vehicles or industrial equipment. The claimant needs to work within a climate-controlled setting because of her history of hypertension. The claimant can perform unskilled, routine and repetitive types of work and can remember, understand, and carry out assignments and instructions for two-hour increments over an 8-hour day. The claimant can tolerate just occasional changes in her work setting or work routine and can only make occasional decisions when on the job." (R. 22 – 27).

The ALJ then determined that Jones had no past relevant work. (R. 27). At Step Five, based on testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy that Jones could perform given her RFC, age, education, and work experience. (R. 27 – 28). Thus, the ALJ found that Jones was not disabled under the Social Security Act. (R. 28 – 29).

## IV. *Analysis*

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining

physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Id.* (quoting *Lewis*, 125 F.3d at 1440). On the other hand, an ALJ is not required to afford special deference to the opinions of non-treating physicians, *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam), and an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per

curiam).

Jones's sole claim is that the ALJ reversibly erred in partially rejecting the opinion of Dr. Haynes, a non-examining medical expert who testified at the June 3, 2016 ALJ hearing.[7] Specifically, while the ALJ gave "great weight" to Dr. Haynes's opinion that Jones "should avoid hazardous work situations, such as working around moving machinery and unprotected heights," the ALJ gave "little weight" to Dr. Haynes's statement that Jones "could be expected to miss two or three days of work per month because of her [migraine] headaches…" (R. 23 – 24).[8] The ALJ summarized Dr. Haynes's testimony regarding Jones's migraine headaches as

_____

[7] Medical experts (MEs) "are physicians, mental health professionals, and other medical professionals who provide impartial expert opinion at the hearing level on claims under title II and title XVI of the Social Security Act. []MEs provide opinions by either testifying at a hearing or responding to written interrogatories…The primary reason an ALJ will request an ME opinion is to help the ALJ evaluate the medical evidence in a case." HALLEX I-2-5-32(A)-(B). "An ME's opinion is not binding on an ALJ[,]" who must evaluate it like any other medical opinion. *Id.* I-2-5-32(B). Dr. Haynes does not appear to have submitted a written report into the record, and the hearing transcript indicates that Dr. Haynes should be deemed a non-examining physician, as he testified that he had only reviewed the administrative record and listened to Jones's hearing testimony prior to giving his opinions. (R. 56 – 57). This is consistent with SSA policy. *See* HALLEX I-2-5-34(A) ("An ALJ will never ask or permit an ME to perform an examination of a claimant. If an ALJ finds an examination is necessary because there is not enough evidence about an impairment(s) for the ALJ to make a finding, the ALJ will request a consultative examination."). Generally, "[t]he opinions of nonexamining, reviewing physicians,…when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz*, 825 F.2d at 280. However, the Commissioner does not argue that Dr. Haynes's status as a non-examining physician should be a factor in whether the ALJ erred in partially rejecting his opinion.

[8] At the June 3, 2016 ALJ hearing, a vocational expert testified that such a level of absenteeism would render an individual "unable to maintain full-time employment…" (R. 71).

follows:

> Dr. Haynes…testified that the claimant's treatment for her headaches has "not been optimized" and that she "could do better" with appropriate treatment. According to Dr. Haynes, the claimant should be under the care of a neurologist and her treatment regimen should include not only prescription medication but also dietary changes and other changes to her daily activities. The claimant has seen a neurologist in the past, Dr. Shaikh, but his was described as just a "cursory evaluation." Dr. Haynes observed that the claimant is prescribed Esgic, which is "part of the problem" and "not a very good lifetime plan" because it can cause rebound headaches. Rather, there are better medications available to treat migraines, such as Topamax. Dr. Haynes further suggested the claimant's headaches could be due in part to her elevated blood pressure. He emphasized that it was medically unlikely her headaches are related to any structural brain abnormality referenced in a brain MRI study conducted in June 2014 (see Exhibit 7F).

(R. 23). The ALJ explained that he gave "little weight to the opinion of Dr. Haynes regarding the amount of work the claimant could be expected to miss" because it "was based on [Jones]'s current treatment, which is suboptimal[,]" and because "Dr. Haynes testified that [Jones]'s treatment could be 'markedly improved.' " (R. 24). The ALJ then proceeded to discuss other record evidence relevant to Jones's headaches, as follows:

> The claimant testified at the June 2016 hearing that she no longer has Medicaid; however, she had insurance throughout most of the adjudication period at issue, but still did not regularly see a neurologist. She sought occasional treatment at Franklin Primary Health Center but was prescribed the same medication – Imitrex and Valproic Acid – for several years (Exhibits B3F, B6F, B10F). Moreover, it is not clear that the claimant is taking her medication as prescribed. For example, according to the claimant's pharmacy records, she did not fill a prescription for either of these medications or any other medication to treat migraine headaches from Rite Aid

pharmacy for the period from September 2014 through September 2015 (Exhibit B14E). Dr. Haynes testified that there were better medications to treat migraines than what the claimant was not [sic] currently taking, such as Topamax. The claimant was prescribed Topamax by her treating mental health provider in September 2015 to treat a mood disorder but also to use as a prophylactic to treat her migraines (Exhibit B11F). The claimant never the [sic] filled the prescription (Exhibit B15F) even though she had Medicaid at the time. Indeed, she acknowledged at the supplemental hearing in June 2016 that she is not taking any maintenance medications. The claimant also routinely denied having a headache to her primary care providers; and her neurological exams have generally been within normal limits. She did not complain of a headache to her treating primary care provider at either office visit in 2015 (Exhibit B10F). The claimant went back to see Dr. Shaikh, a neurologist, in September and October 2015 (Exhibit B12F). She last saw him prior to then back in March 2013 (Exhibit B1F). Dr. Shaikh prescribed Esgic and Maxalt (Exhibit B12F). The claimant testified that Esgic works "wonderful" and helps "a whole lot." Yet, Dr. Haynes testified that Esgic will often cause difficulty with rebound headaches.

The claimant has also been seen in the emergency room a number of times for treatment of an acute migraine headache (Exhibits B2F, B7F). The claimant's headaches generally resolved with treatment and she was discharged home in stable condition. There is no evidence in the record, however, that the claimant has required emergency room treatment for a migraine headache since 2014. She presented to the emergency room on two occasions in 2015 for treatment of elevated blood pressure but she specifically denied having a headache (Exhibit B9F). The claimant was briefly admitted to the hospital in June 2014 for evaluation of a possible stroke secondary to elevated blood pressure (Exhibit B7F). An MRI of her brain showed a structural abnormality. Dr. Haynes testified that the claimant's headaches were not likely related to the structural abnormality but that this is a "loose end." Additional testing, such as a spinal tap, would be necessary to further evaluate the significance of the abnormality but no other testing was ordered. Moreover, the claimant's treating hospital physician read the MRI as negative (Exhibit B7F p.14). A CT scan and CT angiogram were also negative, as was an earlier CT scan of the claimant's brain

taken in June 2013 (Exhibit B2F). The claimant was diagnosed with hypertensive urgency and history of migraines, not a stroke. She was discharged home in stable condition without any evidence of focal neurological deficits. The claimant has not required additional inpatient treatment for any medical condition since June 2014.

(R. 24 – 25).

Dr. Haynes was the only medical professional who offered a specific opinion on the number of work days Jones could be expected to miss due to her headaches.[9] As one ground for rejecting Dr. Haynes's absenteeism opinion, the ALJ found that Jones was not complying with her prescribed migraine treatment, noting "it is not clear that the claimant is taking her medication as prescribed." (R. 24). It is true that the Social Security "regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (citing 20 C.F.R. § 416.930(b)). However, "[i]n order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored[, and t]his finding must be supported by substantial evidence." *Id.* *See also* 20 C.F.R. § 416.930(a) (""In order to get benefits, [a claimant] must follow treatment prescribed by [her] medical source(s) if this treatment is expected to restore [her] ability to work."). Here, however, the ALJ adopted Dr. Haynes's opinion that Jones's current headache treatment was "suboptimal" and could be "markedly improved," and that

---

[9] Examining neurologist "Dr. Yager opined that [Jones] might miss some work at times because of her migraine headaches" but "did not specifically indicate how much work [Jones] could be expected to miss…" (R. 23 – 24).

the medication she was taking for her migraines "will often cause difficulty with rebound headaches." (R. 24). In effect, then, the ALJ determined that Jones's absenteeism from work, as opined by Dr. Haynes, would not have been improved even if she had been following her prescribed treatment. As such, the ALJ's reliance on Jones's purported noncompliance as a basis for rejecting Dr. Haynes's absenteeism opinion is contradicted by the ALJ's own reasoning.

The ALJ also improperly relied on Dr. Haynes's testimony that Jones's migraine headache treatment was "suboptimal" and could be "improved" as a rationale for discounting Dr. Haynes's absenteeism opinion. Whatever the merits of Dr. Haynes's criticism of Jones's migraine treatment, his absenteeism opinion was based on the treatment Jones was actually receiving, and Jones can hardly be penalized for failing to follow an alternative treatment plan that she was never prescribed.[10] Moreover, Dr. Haynes did not testify that his recommended course of treatment would actually restore Jones's ability to work by reducing the number of absences caused by her migraines (*see* R. 56 – 64), and the ALJ cited no evidence to

---

[10] The ALJ did note that Jones failed to fill a September 15, 2015 prescription for Topamax, which Dr. Haynes opined was superior to the migraine medication she was taking. (R. 24). However, as counsel for Jones correctly pointed out at oral argument, the Topamax was prescribed by Jones's treating mental health provider AltaPointe Health Systems, which prescribed it for "its beneficial mood stabilization and its prophylactic use for migraine headaches" after Jones told the AltaPointe examiner at the September 15, 2015 examination that she was experiencing a migraine. (R. 522). On the other hand, those health care providers from which Jones specifically sought migraine treatment, Franklin Primary Health Center and neurologist Dr. Shaikh, prescribed her other medications, both before and after AltaPointe issued the Topamax prescription. (R. 24). Accordingly, Jones's failure to fill the one-time Topamax prescription cannot reasonably be classified as a refusal to follow prescribed migraine treatment.

support his inferential leap that it would.[11]  Particularly given that examining neurologist Dr. Yager, to whose opinion the ALJ gave "partial weight," also opined that Jones "might miss some work at times because of her migraine headaches" (R. 23 – 24), the ALJ's unsupported speculation that the "marked" improvements in Jones's migraine treatment recommended by Dr. Haynes would reduce Jones's absenteeism to non-disabling levels cannot serve as a basis for rejecting Dr. Haynes's absenteeism opinion.

Finally, while he did not explicitly say so, the ALJ appears to have also determined that Dr. Haynes's absenteeism opinion was not consistent with Jones's migraine treatment history.  The ALJ's explanations for this determination, however, are unconvincing.  Though the ALJ found that Jones "routinely denied having a headache to her primary care providers" and that "her neurological exams have generally been within normal limits" (R. 24), the exhibits to which the ALJ cites in support of this finding (B1F, B10F, and B12F) consistently note complaints and diagnoses of headaches/migraines, with Franklin Primary records listing "migraine, unspecified with intractable migraines" as a chronic problem.  (*See* R. 337, 501, 509, 510, 516, 517, R. 526).  The ALJ also observes that, despite having "been seen in the emergency room a number of times for treatment of an acute migraine headache[,]" Jones has not "required emergency room treatment for a migraine headache since 2014."  (R. 24).  However, the mere fact that Jones's

_____

[11] As Jones's brief correctly notes, several parts of Dr. Haynes's hearing testimony are omitted from the transcript as "inaudible," including his absenteeism opinion. However, this obviously did not prevent the ALJ from noting and addressing the absenteeism opinion in his decision.

migraines have not required emergency room treatment, by itself, is not inconsistent with the determination that they may still be so severe as to necessitate missing several days of work a month. Finally, while the ALJ also repeatedly cites "normal" neurological exams, these observations are conclusory and fail to adequately explain how the exams contradict Dr. Haynes's opinion.

In sum, because the undersigned cannot conclude that the ALJ's given reasons for rejecting Dr. Haynes's absenteeism opinion are rational and supported by substantial evidence, reversal is required. *Winschel*, 631 F.3d at 1179. Jones requests that the Commissioner's decision "be reversed and [Jones] found disabled[,]" and only requests a remand for further proceedings in the alternative. (Doc. 17 at 4). The United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (citation and quotations omitted). While the Eleventh Circuit has recognized that a district court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993)*,* Jones has failed to convince the undersigned that this standard is met here.[12]

---

[12] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The

The lone error identified by both Jones and the Court was that the ALJ failed to give sufficient reasons for rejecting part of the opinion of a non-examining physician, and the undersigned is not convinced that there are no grounds on which the Commissioner might still properly reject Dr. Haynes's absenteeism opinion on remand. *See Mason v. Berryhill*, No. CV 1:17-00378-N, 2018 WL 3341788, at *8 n.14 (S.D. Ala. July 6, 2018) ("[A]n ALJ is not required to afford special deference to the opinions of non-treating physicians, *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam), and 'is free to reject the opinion of any physician when the evidence supports a contrary conclusion.' *Sryock*, 764 F.2d at 835 (quotation

---

credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

omitted).").

Accordingly, the Court finds that the Commissioner's final decision denying Jones SSI is due to be **REVERSED** and **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision. On remand, the Commissioner is not required to give Dr. Haynes's absenteeism opinion any particular weight. However, the Commissioner must state with particularity the weight given to the opinion and the reasons therefor, and those conclusions must be rational and supported by substantial evidence. *Winschel*, 631 F.3d at 1179. *See also Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x 841, 847 (11th Cir. 2016) (per curiam) (unpublished) ("In sum, although Dr. Stein was not a treating physician, the ALJ did not express a legitimate reason supported by the record for giving his assessment little weight. *See Winschel*, 631 F.3d at 1179.").

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's decision denying Jones's application for SSI filed February 27, 2014, is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Jones a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Jones be awarded Social Security benefits on the subject application following this remand, the Court hereby grants Jones's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[13]  Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary."  If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 11th day of October 2018.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").